86 F.3d 1174
 18 ITRD 1480
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
INLAND STEEL BAR CO., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellant,
v.
UNITED ENGINEERING STEELS, LTD., Defendant-Appellee.
 Nos. 94-1460, 94-1491.
 United States Court of Appeals, Federal Circuit.
 April 9, 1996
Rehearing Denied; Suggestion for Rehearing In Banc Declined
June 25, 1996.
 
 Before MAYER, Circuit Judge, SKELTON, Senior Circuit Judge, and PLAGER, Circuit Judge.
 PER CURIAM.
 
 
 1
 The United States appeals the judgment of the Court of International Trade, Consol. Case No. 93-04-00234 (June 7, 1994), vacating the final determination of the United States Department of Commerce in Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom, 58 Fed.Reg. 6237 (Dep't Comm. Jan. 27, 1993) (final affirmative countervailing duty determination), as modified on remand in Remand Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom (Oct. 12, 1993) ("Remand Determination "). Commerce had determined that the arm's length sale of a subsidized government-owned company does not automatically terminate the countervailability of previously bestowed subsidies. Thus, it concluded that a portion of the subsidies provided to British Steel Corporation before 1986 passed through to United Engineering Steel Corporation, a joint venture comprised of productive units from British Steel and Guest, Keen & Nettlefolds, a privately owned company. 58 Fed.Reg. at 6240. Commerce also determined that a portion of the sales price paid by a private party for "all or part of a government-owned company can, at least in part, constitute repayment of prior subsidies." Remand Determination at 1-2. In vacating this decision to the extent that Commerce determined that "previously bestowed subsidies are passed through to a successor company sold in an arm's length transaction," Slip Op. at 1, the Court of International Trade held that the arm's-length sale of the company extinguished any remaining "competitive advantage" from the prior subsidies, Slip Op. at 14, because the price presumably included the market value of any continuing competitive benefit.
 
 
 2
 For the reasons set forth in our opinion in Saarstahl AG v. United States, Nos. 94-1457,-1475, we reverse and remand.
 
 
 3
 PLAGER, Circuit Judge, dissenting.
 
 
 4
 I respectfully dissent. In 1986, British Steel (BSC), a government-owned company that had received numerous subsidies (loan cancellations, equity infusions, and regional development grants) from the British Government between 1977 and 1984, sold its Special Steels Business to United Engineering Steels Ltd. (UES), a joint venture set up by British Steel and a private steel company, Guest, Keen, & Nettlefolds (GKN). GKN contributed its Brymbo Steel Works and forgings business to UES. GKN and British Steel each received stock in UES equal in value to the market value of the assets they transferred. The result was that GKN and British Steel each owned 50% of UES.
 
 
 5
 Commerce determined unequivocally that these transactions were at arm's-length and based on commercial considerations, and that they were not merely "corporate restructuring." Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom, 58 Fed.Reg. 6237, 6240 (Dep't Comm. Jan. 27, 1993) (final affirmative countervailing duty determination), modified on other grounds, Remand Determination: Certain Hot Rolled Lead and Bismuth Carbon Steel Products From the United Kingdom (Oct. 12, 1993). Commerce also determined that British Steel did not control UES or even exercise some of its shareholder rights (such as the right to appoint the chairman of the board in 1988). Id. at 6240. Commerce also determined that there were "no mechanisms for passing through subsidies from [the privatized BSC] to UES (e.g., cash infusions) after the formation of the joint venture," id., and thus subsidies received by British Steel after UES was formed were not allocable to UES.
 
 
 6
 On the basis of these facts, Commerce concluded that the sale by British Steel of its Special Steels Business to UES was performed at arm's length and for fair market value consideration, id. at 6240, 6242, that UES is "an independent joint venture company, managed as a separate corporate entity from its parent companies BSC ... and [Guest, Kent & Nettlefolds]," id. at 6240, and that "UES is a separate corporate entity and not controlled by BSC," id.
 
 
 7
 Given these findings and conclusions, there is no basis in the record before us on which the imposition of countervailing duties on the exported products of UES can be justified in law. The Court of International Trade recognized this and held that on this record that no competitive advantage resulting from the prior subsidies accrued to UES. As explained in my dissenting opinion in Saarstahl AG v. United States, Nos. 94-1457, -1475, --- F.3d ---- (Fed.Cir. Mar. 12, 1996) (Plager, J., dissenting), a pass-through of BSC's prior subsidies to UES contravenes the purpose of the countervailing duty law, and is without warrant in law or policy. I would affirm the judgment of the Court of International Trade.